# FOR PUBLICATION

APPELLANT PRO SE:

**ANTHONY HOGAN**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana



FILED
Apr 19 2012, 9:16 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ANTHONY HOGAN,                    )
                                 )
    Appellant-Petitioner,        )
                                 )
        vs.                   )    No.  20A03-1103-PC-158
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Respondent.         )

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Stephen R. Bowers, Judge
Cause No. 20D02-0806-PC-4

**April 19, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Anthony Hogan was convicted of criminal deviate conduct as a class A felony, attempted rape, battery resulting in serious bodily injury, and being a habitual offender. On direct appeal, we vacated his battery conviction on double jeopardy grounds. Thereafter, Hogan sought post-conviction relief. Hogan claimed that: (1) trial and appellate counsel failed to argue that a statement that he made to a detective was inadmissible for any purpose because it was involuntary; (2) trial counsel failed to advise him of his right to a jury trial on the habitual offender charge and appellate counsel should have argued that the record was devoid of evidence of a valid waiver of that right; and (3) trial counsel should have requested an instruction on criminal deviate conduct as a class B felony and appellate counsel should have raised the issue as fundamental error. The post-conviction court denied Hogan's petition.

We affirm. Hogan did not present any evidence that his statement was made involuntarily; thus, his first argument fails. Although it appears that a proper advisement of rights and a personal waiver may not have been made on the record, trial counsel testified that he informed Hogan of his right to a jury trial on the habitual offender enhancement, that he had reviewed Hogan's criminal record and believed that he was in fact a habitual offender, and that Hogan agreed to admit to being a habitual offender in exchange for the State's agreement not to pursue certain aggravating factors. Hogan has not shown that he was prejudiced, and therefore his second argument also fails. Finally, Hogan has not shown that trial counsel's decision to pursue an "all or nothing" strategy was unreasonable. Therefore,

he has not shown ineffective assistance in regard to the lack of an instruction on the lesser-included offense.

## Facts and Procedural History

The facts relevant to Hogan's convictions were outlined in our opinion on direct appeal:

> On a few occasions in the summer and early fall of 2004, Hogan used illegal drugs with Mike Oelslager and his girlfriend, Tracy Kling. On October 5, 2004, Hogan came to the house Kling and Oelslager shared. Oelslager was not home at the time but Kling let Hogan in.

> After the two talked for a few minutes, Hogan asked Kling if she wanted to have sex with him. She declined. Hogan grabbed her from behind, pinned one of her arms, picked her up, and carried her to her son's bedroom. He told her he was going to have sex with her. To dissuade Hogan, Kling told him she was on her period and he stated he would have anal sex with her instead. He held Kling down and attempted to remove her underwear. She struggled against him, and he threatened to kill her.

> Kling convinced him not to have sex with her in her son's bedroom. Hogan pushed her out of the bedroom and onto the couch in the living room. He again attempted to remove her underwear. When Kling again stated she was on her period, Hogan told her to perform oral sex on him. He choked her and again threatened to kill her.

> Kling broke free and jumped over a banister[, which resulted in a sprained ankle and a back injury]. Before she could get out the front door, Hogan caught her and slammed the door shut. He punched her twice in the head, hitting her eye, nose, and forehead, and causing her to bleed. He again threatened to kill her. Hogan used a shirt to wipe the blood from her face. He then took her back to the couch and forced her to perform oral sex on him. He left shortly afterward, taking the shirt with him.

> Kling went to a neighbor's house to call the police. After talking with police, Kling went to the hospital. She received stitches in her forehead, an injection for pain, and a prescription for pain medication.

*Hogan v. State*, No. 20A03-0606-CR-282, 2007 WL 1217990 at *1 (Ind. Ct. App. Apr. 26, 2007) (footnotes omitted), *trans. denied*.

Hogan was charged with class A felony criminal deviate conduct resulting in serious bodily injury, attempted rape, battery resulting in serious bodily injury, and being a habitual offender. On January 3, 2005, an initial hearing was held, and a public defender was appointed to represent Hogan. Two days later, Detective D'Andre Biller (formerly Christian) took Hogan's statement without notifying counsel. Biller typed the statement, which Hogan refused to sign afterward. The typed statement begins with an acknowledgment that he had been advised of his rights, that he understood them, and that he was willing to talk to the detective because he did not have "anything to hide." Appellant's App. at 37. The statement says that Kling had consented to perform oral sex on Hogan in exchange for drugs and that she had done so on multiple occasions. The conclusion of the statement reads, "Detective Christian has asked me if I would be willing to give body standards [for DNA testing]. I don't have a problem with that but I don't know why you need them because I already told you she sucked my dick. I don't want to sign a waiver for the body standards until I talk to my attorney." *Id*. at 39.

Hogan's case was tried to a jury. Kling testified to the facts outlined above. Hogan testified in his own defense and claimed that Kling had voluntarily performed oral sex in exchange for drugs. On cross examination, the State sought to use Hogan's statement to Detective Biller to impeach him. Defense counsel objected, arguing that the statement had been taken after counsel had been appointed and without notice to counsel. The court ruled

that the statement could be used for impeachment even if there had been a constitutional violation. The State attempted to impeach Hogan several times, but although he acknowledged speaking with the detective, he either denied making the statements in the typed statement or asserted that he was unable to remember what he had told the detective. He asserted that she had initiated the questioning, that she typed the statement in her own words, that he did not sign her typed statement, and that his testimony may have been more detailed than his statement to the detective. At the conclusion of the first phase of trial, the jury found Hogan guilty of criminal deviate conduct resulting in serious bodily injury, attempted rape, and battery resulting in serious bodily injury.

Thereafter, defense counsel informed the court that an agreement had been reached with the State regarding the remaining issues:

> Your Honor, with regard to the habitual offender stage, the State has also filed notice of intention to present aggravators in what would be a third proceeding. The State then intended to then try the issue of aggravators and have the jury find aggravators beyond a reasonable doubt. The defendant is willing to stipulate to his habitual offender status, provided that the State, and the State had indicated that they will, withdraw their intention to have the jury find aggravating circumstances and so that any aggravators that would probably be the role of the jury will not be found.

*Id*. at 43.[1] The State then questioned Hogan about his criminal record. The trial court entered convictions of class A felony criminal deviate conduct, attempted rape, and battery, attached

---

[1] Hogan committed his offenses while the presumptive sentencing scheme was in effect, but his trial took place after our supreme court decided *Smylie v. State*, 823 N.E.2d 679 (2005), in which the court determined that this state would comply with *Blakely v. Washington*, 542 U.S. 296 (2004), by trying aggravating factors to a jury.

the habitual offender enhancement to the criminal deviate conduct conviction, and imposed an aggregate sentence of sixty years.

Counsel was appointed to pursue a direct appeal. Appellate counsel raised four arguments: (1) there was an insufficient factual basis to support the habitual offender enhancement; (2) Hogan's conviction of criminal deviate conduct resulting in serious bodily injury must be set aside because the verdict form provided to the jury referred only to "criminal deviate conduct" and not "criminal deviate conduct resulting in serious bodily injury"; (3) Hogan's convictions for criminal deviate conduct and battery resulting in serious bodily injury were based on the same evidence and therefore violated the double jeopardy clause of the Indiana Constitution; and (4) there was insufficient evidence that Hogan took a substantial step toward raping Kling. We agreed with Hogan on the double jeopardy issue, but affirmed as to the other three issues; therefore, we vacated his battery conviction. Appellate counsel filed a petition for transfer to the supreme court, which was denied.

On April 27, 2008, Hogan filed a pro se petition for post-conviction relief. The State Public Defender was appointed to represent Hogan, but withdrew after Hogan indicated that he still wanted to pursue issues that the State Public Defender had found to be without merit. Hogan amended his petition several times, but has not provided us with a complete copy of his petition. As best as we can tell, Hogan's claims were: (1) that trial and appellate counsel failed to argue that his statement to the detective was inadmissible for any purpose because it was involuntary; (2) that trial counsel failed to advise him of his right to a jury trial on the habitual offender charge and that appellate counsel should have argued that the record was

6

devoid of evidence of a valid waiver; and (3) that trial counsel should have requested an instruction on criminal deviate conduct as a class B felony (a lesser-included offense of the class A felony, which requires proof of serious bodily injury) and that appellate counsel should have raised the issue as fundamental error.[2]

Evidence was heard on June 30 and September 2, 2010. Concerning Hogan's statement to the detective, trial counsel testified that he thought that there was a possible

---

[2] Hogan filed defective appendices on August 12 and August 30, 2011. On September 15, 2011, he filed an appendix that complied with all the technical rules, but lacked portions of the record. According to our docket, on November 4, 2011, the State filed a "Motion to Compel a Conforming Appendix," requesting that Hogan be ordered to file an appendix that included the missing documents, including his petition for post-conviction relief. On November 14, 2011, we granted the State's motion. Before receiving our order, Hogan filed a supplemental appendix that included most of the missing documents; the clerk filed it on November 10, 2011, pursuant to the prison mailbox rule. For purposes of citation, "Appellant's App." refers to the appendix filed on September 15, 2011, and "Supp. Appellant's App." refers to the supplemental appendix filed on November 10, 2011.

The supplemental appendix contains what appears to be a jumble of pages from various versions of his post-conviction petition. Despite our order of November 14, 2011, Hogan never submitted a complete, final copy of his petition; thus, determining the issues properly before us has presented a challenge. Hogan has divided his brief into seven arguments. The first four arguments address three issues: his claim that his statement to the detective was inadmissible even for impeachment, that he was not advised of his right to a jury trial on the habitual offender charge, and that the jury should have been instructed on criminal deviate conduct as both a class A and a class B felony. In the fifth argument, he explains why he feels that trial counsel is responsible for these errors, and in the sixth argument, he explains why he feels that appellate counsel is responsible for these errors. To the extent that the first four arguments are meant to be free-standing claims of trial error, we agree with the State that those issues are foreclosed because they were available, but not raised on direct appeal. *Williams v. State*, 808 N.E.2d 652, 659 (Ind. 2004) ("If an issue was known and available on direct appeal, but not raised, it is procedurally defaulted as a basis for relief in subsequent proceedings."). We will consider those arguments only to the extent that they are relevant to his ineffective assistance of counsel claims.

Finally, Hogan's seventh argument asserts that the post-conviction court failed to enter findings of fact and conclusions of law on additional claims "identified in the petition as 8(d), 8(d)(1), and 9(e)(2)." Appellant's Br. at 39. Without his petition, we are unable to determine what these claims are and whether they were properly before the post-conviction court. Hogan was specifically ordered to provide a copy of his petition, and he has failed to do so; therefore, we conclude that these additional issues are waived. *See* Ind. App. Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on…."); *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.

"violation of the professional rules of conduct or an evidentiary rule. There was never an issue brought up … by you to me that you hadn't understood that you had counsel and that you hadn't decided to waive it by talking." PCR Tr. at 48-49. He stated that he felt that he "made the best objection that … was available … at the time." *Id*. at 61. The State asked him, "Did you believe that the statement had been tak[en] involuntarily based on your review of the police reports and talking with Mr. Hogan?" *Id*. at 92. Trial counsel responded negatively.

> Regarding the habitual offender phase of Hogan's trial, trial counsel testified:

> I cannot recall specifically the words I used to advise him. I can tell you that I recall telling him that we could proceed with the habitual phase and that the State is required to prove that sentencing enhancement to the jury or we could concede to it and in return we would receive some benefit and I'm, as I review this transcript just now, the benefit was the State's agreement to withdraw their notice of aggravators to be tried to the jury.… I … reviewed Mr. Hogan's criminal record with him directly and it was … my belief throughout the case that he was indeed was … a habitual offender and so I felt that we weren't … really in a position to contest with any effectiveness the habitual offender stage, therefore any benefit, however small, would be a benefit in terms of the stipulation.

*Id*. at 97.

Regarding the jury instructions, trial counsel testified that he did not tender an instruction on criminal deviate conduct as a class B felony because he wanted to avoid a compromise verdict. Trial counsel stated that his primary strategy was to attack the victim's credibility due to her drug use around the time of the offense.

Appellate counsel testified that he had reviewed the trial transcript and raised what he deemed to be the four strongest issues.

8

Hogan also called Detective Biller to testify. Detective Biller testified that she had not been aware that Hogan had been appointed counsel. She stated that she read him a waiver of rights and he said that he understood his rights, that he "didn't have anything to hide," and that he was willing to talk. *Id*. at 110. She asserted that Hogan did not mention that he already had counsel until she was finished taking his statement.

On February 8, 2011, the post-conviction court issued an order denying post-conviction relief. The court found that the statement taken by Detective Biller was an "obvious 6th Amendment violation," but there was "no evidence that the statement was less than voluntary." Appellant's Br. at 44. The court further held that it was permissible to use the statement for impeachment purposes notwithstanding the violation:

> The Supreme Court determined in *Kansas v. Ventris* that any statement in violation of a defendant's Sixth Amendment right may be used for impeachment purposes. 129 S. Ct. 1841, 1847 (2009). The Petitioner argues that the case was published in 2009 and should not apply to his violation. However, the Court advised, "[o]ur precedents make clear the game of excluding tainted evidence for impeachment purposes is not worth the candle. The interests safe-guarded by such exclusion are 'outweighed by the need to assure the integrity of the trial process.[']" *Id*. at 1846, citing *Stone v. Powell*, 428 U.S. 465, 488 (1976). The Petitioner's statement was properly used for impeachment purposes only.

*Id*. at 47. The court also found that trial counsel's decision not to offer an instruction on a lesser included offense of class A felony criminal deviate conduct was an acceptable trial strategy. The court did not make any findings or conclusions on any additional issues that Hogan may have raised. Hogan now appeals.

9

**Discussion and Decision**

The petitioner in a post-conviction proceeding bears the burden of proving the grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Hogan is appealing a negative judgment; therefore, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 643-44. "Although we do not defer to the post-conviction court's legal conclusions, a post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *State v. Damron*, 915 N.E.2d 189, 191 (Ind. Ct. App. 2009), *trans. denied*.

Post-conviction proceedings do not afford a petitioner with a "super-appeal." *Williams v. State*, 808 N.E.2d 652, 659 (Ind. 2004). "If an issue was known and available on direct appeal, but not raised, it is procedurally defaulted as a basis for relief in subsequent proceedings." *Id*.

To prevail on a claim of ineffective assistance of counsel, Hogan must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced him. *Coleman v. State*, 694 N.E.2d 269, 272 (Ind.1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). There is a strong presumption that counsel rendered adequate assistance. *Id*. "Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance." *Id*. at 273. "Counsel's performance is evaluated as a whole." *Lemond v. State*, 878 N.E.2d 384, 391 (Ind. Ct. App.

10

2007), *trans. denied*. To establish the prejudice prong of the test, the defendant must show

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. *Sims v. State*, 771 N.E.2d 734, 741 (Ind. Ct. App.

2002), *trans. denied*. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id*. "Prejudice exists when the conviction or sentence resulted

from a breakdown in the adversarial process that rendered the result of the proceeding

fundamentally unfair or unreliable." *Coleman*, 694 N.E.2d at 272. This standard applies to

both claims of ineffective assistance of trial and appellate counsel. *Rhoiney v. State*, 940

N.E.2d 841, 845 (Ind. Ct. App. 2010), *trans. denied*.

Our supreme court has recognized three types of ineffective assistance of appellate

counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been

raised; and (3) failure to present issues well. *Wrinkles v. State*, 749 N.E.2d 1179, 1203 (Ind.

2001), *cert. denied*.

> When a petitioner claims the denial of effective assistance of appellate counsel
> because counsel did not raise issues the petitioner argues should have been
> raised, reviewing courts should be particularly deferential to counsel's
> strategic decision to exclude certain issues in favor of others, unless such a
> decision was unquestionably unreasonable. But this does not end our analysis.
> Even if we determine that counsel's choice of issues was not reasonable, a
> petitioner must demonstrate a reasonable probability that the outcome of the
> direct appeal would have been different in order to prevail.

*Taylor v. State*, 840 N.E.2d 324, 338 (Ind. 2006) (citations and quotation marks omitted).

We must determine "(1) whether the unraised issues are significant and obvious from the

face of the record; and (2) whether the unraised issues are clearly stronger than the raised

11

issues." *Gray v. State*, 841 N.E.2d 1210, 1214 (Ind. Ct. App. 2006) (quotation marks omitted), *trans. denied*.

## *I. Admissibility of Statement*

The State did not attempt to use Hogan's statement as substantive evidence in its case-in-chief, in effect conceding that his statement had been taken in violation of the Sixth Amendment.[3]  The State argues that the statement was nevertheless admissible for impeachment purposes pursuant to *Kansas v. Ventris*, 129 S. Ct. 1841 (2009).  The State is correct that a statement taken in violation of the Sixth Amendment right to counsel may be admissible for impeachment, but to the extent that the State is arguing that *Ventris* permits it to sidestep analysis of the voluntariness of the statement, we disagree.

While Ventris was incarcerated pending trial on murder and robbery charges, officers planted an informant in his cell.  According to the informant, Ventris confessed to shooting a man and taking his keys, wallet, $350, and a vehicle.  At trial, Ventris testified and claimed

---

[3] At the beginning of the post-conviction hearing, the State stipulated that Hogan had been appointed counsel a few days before his statement was taken, that Hogan's statement was taken without counsel present, that the statement was not used in the State's case-in-chief, and that the statement was used to impeach Hogan when he elected to testify.  PCR Tr. at 26-27.

In *Michigan v. Jackson*, 475 U.S. 625, 635-36 (1986), the Supreme Court ruled that once a criminal defendant invokes the Sixth Amendment right to counsel, a subsequent waiver of that right is presumed invalid if secured by police-initiated conversation.  The Court later characterized this as a prophylactic rule. *Michigan v. Harvey*, 494 U.S. 344, 345 (1990).  In *Harvey*, the Court held that violation of this prophylactic rule does not prevent the State from using the statement to impeach the defendant's false or inconsistent testimony. *Id*. at 351.

Subsequent to Hogan's trial, *Jackson* was overruled by *Montejo v. Louisiana*, 129 S. Ct. 2079, 2091 (2009).  However, statements that are in fact involuntary remain invalid apart from *Jackson*. *See id*. at 2089.

that a co-defendant was responsible for the crimes. The State then used the informant's testimony for impeachment.

The Supreme Court stated that previous cases had not addressed the issue of when the violation occurs – at the time of the interrogation or at the time the statement is admitted at trial. The Court concluded that the Sixth Amendment right to counsel "is a right to be free of uncounseled interrogation, and is infringed at the time of the interrogation." *Id*. at 1846. Therefore, the Court stated that Ventris's case did not involve "the prevention of a constitutional violation, but rather the scope of the remedy for a violation that has already occurred." *Id*. Citing several cases, the Court concluded that Ventris's statement could still be used for impeachment. *Id*. at 1847.

The Court did not discuss whether Ventris's statement was actually involuntary (and not just a violation of the "prophylactic" rules). The State appears to interpret *Ventris* to mean that inquiry into the voluntariness of a statement is unnecessary as long as the statement is only used for impeachment. We find nothing in *Ventris* that permits the State to sidestep the issue of voluntariness. On the contrary, *Ventris* mentioned the holding in *New Jersey v. Portash* that a Fifth Amendment violation occurs "whenever a truly coerced confession is introduced at trial, whether by way of impeachment or otherwise." *Id*. at 1845 (citing *New Jersey v. Portash*, 440 U.S. 450, 458-59 (1979)).

Hogan is correct that in order for his statement to be admissible, it had to be voluntary. When the voluntariness of a statement is challenged *at the trial level*, the State has the burden of proving voluntariness beyond a reasonable doubt. *Gentry v. State*, 471 N.E.2d

13

263, 267 (Ind. 1984). The defendant is entitled to a hearing outside the presence of a jury, and the trial court must find voluntariness before admitting it into evidence. *Morgan v. State*, 675 N.E.2d 1067, 1071-72 (Ind. 1996). Trial counsel objected to the use of Hogan's statement. Portions of the ensuing bench conference were inaudible and therefore were not transcribed by the court reporter, but it appears that trial counsel objected solely on the basis that Hogan's statement had been taken without notice to counsel. As discussed above, this fact does not prevent his statement from being used for impeachment.

Nevertheless, *in post-conviction proceedings*, it is the petitioner who bears the burden of proof, and the record does not show that trial counsel had any basis for challenging the voluntariness of the statement. Trial counsel testified that in reviewing the evidence and speaking to Hogan, he had no reason to believe that the statement had been involuntary or that Hogan had not understood that he was waiving his right to counsel. Trial counsel stated that he believed that he had made the best objection available. Detective Biller testified that she had advised Hogan of his right to counsel and that he indicated that he understood his rights. She stated that Hogan had not mentioned that he already had counsel until the conclusion of the statement. Although Hogan claimed otherwise in his trial testimony, this testimony could rightly be considered self-serving. Appellate counsel testified that, in his experience, it was not unusual for criminal defendants to make oral statements but refuse to sign written statements because they did not believe that an oral statement carried the same weight. Given the lack of evidence that the statement was involuntary, Hogan has not

persuaded us that the post-conviction court erred by finding that neither trial nor appellate counsel was ineffective for failing to address the issue.

## II. Habitual Offender

The right to a jury trial applies to habitual offender proceedings. *Gonzalez v. State*, 757 N.E.2d 202, 204-05 (Ind. Ct. App. 2001), *trans. denied*. The defendant is presumed not to waive this right unless he affirmatively acts to do so. *Id*. at 205. The defendant must express his personal desire to waive a jury trial, and that desire must be apparent from the record in the form of a written waiver or a colloquy in open court. *Id*. "It is fundamental error to deny a defendant a jury trial unless there is evidence of the defendant's knowing, voluntary and intelligent waiver of the right." *Reynolds v. State*, 703 N.E.2d 701, 704 (Ind. Ct. App. 1999).

The State notes, "It is possible that the trial court did not explicitly inform Hogan of his right to have that evidence heard by a jury. Hogan's record does not allow that determination." Appellee's Br. at 16. Only select portions of the trial record were admitted into evidence at the post-conviction hearing. It appears that we have the entire portion of the transcript covering the habitual offender phase of the trial, but without a complete record, we have no way of verifying that.

We note that at the post-conviction hearing, Hogan requested that the court take judicial notice of the trial record, and the court told Hogan that it could not do that. The post-conviction court was mistaken. Effective January 1, 2010, Indiana Evidence Rule 201 was amended to permit courts to take judicial notice of "records of a court of this state." The

15

hearing in this case commenced in June 2010. In *Graham v. State*, 947 N.E.2d 962, 964-65

(Ind. Ct. App. 2011), *opinion on rehearing*, we stated:

> First, if a pro se PCR petitioner comes to court bearing a record, including a transcript or other documents, that he or she wants to use in support of his or her petition, the PCR court should ensure that the record is introduced into evidence…. Second, if a PCR court does in fact, on its own initiative or at the request of a party, take judicial notice of other court records in ruling upon a PCR petition, those records should be made part of the PCR record…. Nothing in either of these statements requires a PCR court to go searching for records in support of either party's position or to become an advocate or investigator for either party.

It appears that Hogan had at least portions of the trial record with him. It is unclear whether

he attempted to tender the entire record to the court.

Giving Hogan the benefit of the doubt, we will review the portion of the transcript that

appears to cover the habitual offender proceedings. Trial counsel explained to the court that

an agreement has been reached – that Hogan would admit to being a habitual offender in

exchange for the State forgoing the aggravating circumstances that it had intended to prove to

the jury. The State then questioned Hogan to establish the factual basis for the habitual

offender enhancement. Nothing in the record shows that Hogan was advised of his right to a

jury trial during the habitual offender proceedings, and a personal waiver does not appear in

the record.

Nevertheless, Hogan has not shown that he was prejudiced. Trial counsel testified

that he advised Hogan of his right to a jury trial on the habitual offender enhancement. He

also stated that he had reviewed Hogan's criminal record and felt that he was not "in a

position to contest with any effectiveness the habitual offender stage." PCR Tr. at 97.

Therefore, he felt that any offer by the State, "however small," would benefit Hogan. *Id.* Hogan presented no evidence that he lacks the felony convictions necessary to establish his habitual offender status, nor has he presented any evidence that he would have chosen to proceed with a jury trial had the court explicitly informed him of that right. Therefore, we conclude that Hogan has not established ineffective assistance of counsel with regard to either trial or appellate counsel.

### III. Jury Instruction

Finally, Hogan argues that the jury should have been instructed on criminal deviate conduct as both a class A and class B felony. The distinguishing element between the two offenses is serious bodily injury to the victim. Thus, the class B felony is inherently included in the class A felony. *See Wright v. State*, 658 N.E.2d 563, 566 (Ind. 1995) (if the lesser offense may be established by proof of the same material elements or less than all the material elements of the greater offense, it is inherently included). Hogan therefore would have been entitled to an instruction on the class B felony if there was a serious evidentiary dispute concerning the serious bodily injury. *See id.* at 567 ("If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included offense."). Hogan argues that there was a serious evidentiary dispute because the jury could have believed Kling's testimony that she

was forced to perform oral sex and believed his testimony that she injured herself because she was high and behaving erratically.

We lack a complete record with which to review this claim. *See Webb v. State*, No. 71S05-1106-CR-329, 2012 WL 982772 at *3 (Ind. Mar. 23, 2012) (court is to look at *all* evidence presented to determine whether a serious evidentiary dispute exists). However, even assuming that Hogan would have been entitled to the instruction, it is well established that counsel may opt to pursue an "all or nothing" strategy. *See*, *e.g.*, *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998). This strategy does not constitute ineffective assistance of counsel unless it is "so deficient or unreasonable as to fall outside of the objective standard of reasonableness." *Id*. Here, trial counsel testified that his primary strategy was to attack the victim's credibility, and he felt that offering an instruction on the lesser-included offense would lend some credence to her testimony. He also testified that he was concerned that the jury would return a "compromise" verdict if given the option to convict Hogan of the class B felony. PCR Tr. at 99. Hogan has not shown that this was an unreasonable strategy. Thus, he has not shown that trial counsel was ineffective by not offering a lesser-included instruction; nor has he shown that appellate counsel was ineffective by not raising the issue as fundamental error on appeal.

### IV. *Additional Claims*

Hogan asserts that he raised additional claims that the post-conviction court failed to address. For the reasons discussed in footnote 2, *supra*, Hogan has waived appellate review of any additional claims.

18

**Conclusion**

Hogan is correct that his statement could not be used unless it was taken voluntarily. However, he has not presented any evidence that his statement was involuntary; therefore, he has not established ineffective assistance of trial or appellate counsel in regard to this issue. Hogan is also correct that an advisement of his right to a jury trial on the habitual offender and his personal waiver should have been made on the record. However, he has failed to show that he was prejudiced by this and therefore has failed to establish ineffective assistance of trial or appellate counsel. Hogan has failed to show that trial counsel's decision not to tender an instruction on a lesser-included offense was an unacceptable strategy and has likewise failed to show that appellate counsel should have raised the issue as fundamental error. Any additional claims that Hogan may have made are waived because, despite our order to include his post-conviction petition in his appendix, he has failed to do so, and we are unable to determine what those additional claims might be. Therefore, we affirm the judgment of the post-conviction court.

Affirmed.

MAY, J., and BROWN, J., concur.

19