**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 15 2014, 10:21 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**CHRISTOPHER ANDERSON**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHRISTOPHER ANDERSON,                )
                                     )
    Appellant-Petitioner,        )
                                     )
      vs.                      )     No. 49A04-1307-PC-340
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Respondent.         )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Master Commissioner
Cause No. 49G03-0005-PC-86704

**July 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Christopher Anderson appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred when it found appellate counsel was not ineffective for failing to raise the issue that trial counsel was ineffective for: (1) failing to tender lesser-included offense instructions; and (2) failing to object to the serious violent felon ("SVF") in possession of a firearm count being tried together with the habitual offender enhancement.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts supporting Anderson's convictions as set forth by this court on direct appeal are as follows:

> [I]n the early morning hours of May 19, 2000, Anderson's girlfriend, Doria White, and Andre Clarke arrived at White's apartment and found Anderson and Andre's cousin, Robert Clarke, in the kitchen. Anderson began arguing with Andre, accusing him of having "somethin' goin' on" with White. Anderson pulled out a gun and threatened to rob Andre. White ran out of the apartment and went to a neighbor's house. When she called her apartment later to see what was happening, Anderson answered the phone and assured her that everything was okay.
>
> As White was returning to her apartment, however, Andre and Anderson began arguing again. Anderson then shot Andre three times, killing him. He next pointed the gun at Robert's head and threatened to kill him if he said anything. Anderson ran out the front door. Robert and White, who heard the gunshots, called the police. Officer Brandon Mills arrived at the scene approximately thirty seconds after receiving the dispatch and found Robert kneeling next to Andre. No weapon was found on Robert or in the residence.
>
> On May 26, 2000, the State charged Anderson with murder, possession of a firearm by a serious violent felon, carrying a handgun without a license, and intimidation. He was also alleged to be an habitual offender. . . .

2

Anderson's whereabouts were unknown until June 28, 2000, when he was arrested in Birmingham, Alabama. He was returned to Indiana, where a jury trial was conducted on May 21 and 22, 2001.

*Anderson v. State*, 774 N.E.2d 906, 908-09 (Ind. Ct. App. 2002).

The trial was conducted in two phases. During the first phase, the jury heard evidence regarding the charges of murder, carrying a handgun without a license, and intimidation. Conflicting testimony was given regarding Anderson's demeanor that night. Anderson's girlfriend, White, testified that Anderson and Andre were playing around and, while there was a gun, it was not pointed at anyone. *Tr.* at 38. In contrast, Andre's cousin, Robert, testified that while he, Andre, and Anderson were in White's kitchen, Anderson and Andre began arguing after Anderson started to rob Andre, who responded, "I ain't givin' you nothing." *Id.* at 68.

The defense theory at trial was that Robert, not Anderson, was the shooter. In closing, the State argued that the only witness to the shooting was Robert, a man who had lied before and could have been lying when he testified against Anderson at trial. In closing the State emphasized that Robert was a man who initially said he was not present when the shooting occurred, but later implicated Anderson as the shooter; a man who said he saw Anderson kick Andre in the stomach two or three times, yet the autopsy did not support that testimony; and, finally, a man who was at the scene, and, yet, police failed to pursue him as a suspect. *Id.* at 170-71.

During deliberations, a juror informed the trial court that she had recognized one of the courtroom spectators who she believed was sitting with Anderson's supporters in the courtroom. The trial court was prepared to remove this juror, but Anderson objected to this proposed measure and

3

> moved for a mistrial instead. The trial court denied the motion. Anderson was found guilty of all charges and was found to be an habitual offender. The trial court imposed a sentence of sixty years for the murder conviction, enhanced by thirty years for the habitual offender finding, ten years for the serious violent felon firearm conviction, and four years for the intimidation conviction, all to be served consecutively for a total executed sentence of 104 years. No sentence was imposed for the handgun conviction.

*Anderson*, 774 N.E.2d at 909.

The jury returned the convictions at two different times. First, the jury found Anderson guilty of the murder, intimidation, and possession of a handgun without a license charges. Only then did the jury hear evidence, in phase two of the trial, on the SVF in possession of a firearm count and the habitual offender allegation. The SVF firearm charge alleged a 1987 robbery conviction as the relevant predicate violent felony; the habitual offender charge alleged as its predicate offenses the same 1987 robbery conviction and a 1994 conviction for Class D felony carrying a handgun without a license. *Id.*

Anderson's appellate counsel raised the following five issues on direct appeal: (1) whether the trial court erred in permitting a witness who sat through part of voir dire to testify when there was a separation of witnesses order; (2) whether the trial court erred in allowing the State to introduce evidence that Anderson was found by law enforcement officials in Alabama after the murder; (3) whether the trial court should have ordered a mistrial when one juror indicated during deliberations that she recognized one of the courtroom spectators; (4) whether there was sufficient evidence to support the murder and intimidation convictions; and (5) whether the enhancement of his murder sentence because of his habitual offender status was improper because one of the prior convictions used to

4

establish that status also established that Anderson was a serious violent felon. *Anderson,* 774 N.E.2d at 908. We affirmed Anderson's conviction in a nine-page published opinion, dated July 10, 2002.

On October 4, 2011, Anderson, acting pro se, filed his Verified Petition for Post-Conviction Relief ("PCR") raising one issue—whether his appellate counsel was ineffective for failing to raise ineffectiveness of trial counsel on direct appeal.[1] *Appellant's PCR App.* at 17-27.[2] Jeffrey Neel was Anderson's attorney at trial, and attorney Kenneth Roberts represented him on appeal. In his PCR Petition, Anderson claimed that Neel was ineffective at trial for not requesting jury instructions for the lesser-included offenses of voluntary manslaughter and reckless homicide and for not objecting to the SVF count being tried together with the habitual offender allegation. *PCR App.* at 20-21. Anderson alleged that Roberts was ineffective for failing to raise these claims of ineffectiveness of trial counsel on direct appeal. *Id.* at 21-22.

At the March 2012 PCR hearing, Neel testified that he did not request jury instructions for any lesser included offenses because Anderson insisted he was innocent and directed Neel not to request lesser included instructions. *PCR Tr.* at 6. Neel did not have any recollection of whether the habitual offender allegation and the SVF count were tried together and, therefore, could offer no explanation for why he did not object to that

---

[1] Anderson, by counsel, filed two other petitions for post-conviction relief prior to the instant filing, one in 2002 and the other in 2003. It is not clear what became of the first petition, but the latter one was dismissed on Anderson's motion in 2004. Neither petition is pertinent to the appeal before us.

[2] Hereinafter, we will refer to *Appellant's PCR App.* as *PCR App.*

procedure. *Id.* at 9. Roberts, testified that he had no recollection of Anderson's case and that he no longer had a file for Anderson. *Id.* at 15.

The State and Anderson, acting pro se, filed their respective proposed findings of fact and conclusions thereon. On June 6, 2013, the trial court denied Anderson's PCR Petition. *Id.* at 3-16. Anderson now appeals.

## DISCUSSION AND DECISION

Post-conviction relief does not afford a petitioner with a super-appeal. *Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013). Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). If an issue was known and available, but not raised on direct appeal, it is waived. *Garrett*, 992 N.E.2d at 718. Further, in a PCR proceeding, the petitioner bears the burden of establishing his claim by a preponderance of the evidence. *Id.* When appealing the denial of a PCR petition, the petitioner stands in the position of one appealing from a negative judgment. *Id.* Therefore, in order to prevail upon his appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

The standard of review for ineffective assistance of appellate counsel is the same as that for trial counsel. *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998). To establish a post-conviction claim alleging violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two

6

components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Garrett*, 992 N.E.2d at 718. First, the defendant must show appellate counsel was deficient in his or her performance and, second, that the deficiency resulted in prejudice. *Id*. at 719. "To satisfy the first prong, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. "To satisfy the second prong, the defendant must show prejudice: a reasonable probability (*i.e.*, a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id*.

Ineffective assistance claims regarding appellate counsel, "generally fall into three basic categories: (1) denial of access to an appeal, (2) failure to raise issues that should have been raised, *i.e.*, waiver of issues; and (3) failure to present issues well." *Id*. at 724 (internal quotation marks omitted). Here, Anderson's claim is based upon the waiver of issues category.

Recently, our Supreme Court noted:

When evaluating a claimed deficiency in appellate representation due to an omission of an issue, a post-conviction court is properly deferential to appellate counsel's choice of issues for appeal unless such a decision was unquestionably unreasonable. Such deference is appropriate because the selection of issues for direct appeal is one of the most important strategic decisions of appellate counsel. Appellate counsel's performance, as to the selection and presentation of issues, will thus be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to the appellate counsel. In crafting an appeal, counsel must choose those issues which appear from the face of the record to be most availing. Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker

7

arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Thus, to prevail in such claim in post-conviction proceedings, it is not enough to show that appellate counsel did not raise some potential issue; instead, the defendant must show that the issue was one which a reasonable attorney would have thought availing.

*Hampton v. State*, 961 N.E.2d 480, 491-92 (Ind. 2012) (citations omitted) (internal quotation marks omitted). As the post-conviction court correctly said, "Allegations of ineffective assistance of appellate counsel regarding the selection and presentation of issues must overcome the strongest presumption of adequate assistance." *PCR App*. at 9 (citing *Law v. State*, 797 N.E.2d 1157, 1162 (Ind. Ct. App. 2003)).

When appellate counsel waives issues on appeal, we apply the following test to evaluate the performance prong: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id*. (citing *Timberlake*, 753 N.E.2d at 606). If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether "the issues which . . . appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial." *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id*. at 1196.

When faced with the question of whether appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel, the post-conviction court

held that appellate counsel was not ineffective. We agree. At the time of the post-conviction hearing, Roberts had been a practicing attorney for thirty-eight years, had tried about 130 cases and had "[d]one over 300 appeals in the federal and state courts." *PCR Tr.* at 20. To pursue Anderson's appeal, Roberts had to make a strategic decision regarding what issues to raise. Accordingly, he winnowed out weaker arguments and focused on five key issues on appeal. Our court's consideration of those issues resulted in a nine-page, published opinion affirming Anderson's convictions.

As the post-conviction court noted, Roberts's decision not to raise the ineffective assistance claims on direct appeal "is consistent with the directive of the Indiana Supreme Court that 'a post-conviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim.'" *PCR App.* at 10 (quoting *Woods v. State*, 701 N.E.2d 1208, 1219 (Ind. 1998), *cert. denied*, 528 U.S. 861 (1999)). In *Conner v. State*, 711 N.E.2d 1238, 1252 (Ind. 1999), *cert. denied*, 531 U.S. 829 (2000), a case decided prior to Anderson's direct appeal, our Supreme Court said:

> This Court has recently clarified the law regarding claims of ineffective assistance of counsel. In *Woods*, we held that a Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in post-conviction proceedings. However, if ineffective assistance of trial counsel is raised on direct appeal . . ., the issue will be foreclosed from collateral review. Thus, because appellate counsel is not required to raise this claim on direct appeal, appellate counsel's failure to do so was not deficient representation.

*Conner*, 711 N.E.2d at 1252 (citations omitted) (internal quotation marks omitted) (citing *Woods*, 701 N.E.2d at 1211-20). Roberts can no longer remember having represented Anderson on appeal. *PCR Tr.* at 15, 19. Even so, at the PCR hearing, Roberts testified

9

that he was aware of the holding in *Woods* and that he would have taken that case into account in deciding whether or not to raise an ineffectiveness claim on direct appeal. *PCR Tr.* at 22-23. Failure to raise the issue that trial counsel was ineffective would not have waived that issue for a PCR proceeding. *Conner*, 711 N.E.2d at 1252. We agree with the post-conviction court's conclusion that Roberts's performance was not deficient for following the guidance set forth by our Supreme Court in *Woods*. *PCR App.* at 10 (citing *Conner,* 711 N.E.2d at 1252).

Although Anderson raises only a claim of ineffectiveness of appellate counsel, his challenge involves a claim that appellate counsel should have raised ineffectiveness of his trial counsel on direct appeal. Like the post-conviction court, for the sake of thoroughness, we also address Anderson's claim that trial counsel was ineffective for failing to tender lesser included instructions and failing to object to the SVF in possession of a weapon charge being tried together with the habitual offender allegation.

Our Supreme Court has said:

A reviewing court will not second-guess the propriety of trial counsel's tactics. . . . [T]rial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. This is so even when such choices may be subject to criticism or the choice ultimately prove detrimental to the defendant.

*Davidson v. State*, 763 N.E.2d 441, 446 (Ind. 2002) (citations omitted) (internal quotation marks omitted), *cert. denied*, 537 U.S. 1122 (2003). Neel's theory in defending Anderson against the murder charge was that the State had charged the wrong man—Anderson did not shoot Andre, instead, Robert was the one who committed the murder. This was

10

consistent with Neel's post-conviction testimony that Anderson maintained that he was innocent and thus did not want to include instructions for lesser included offenses. *PCR Tr*. at 11-12. Neel testified that it was his standard procedure to discuss issues with his clients and for them to make decisions together. *Id*. at 12.

Regarding giving the lesser-included instructions, Neel testified that he discussed that option with Anderson and, thereafter, decided not to give the lesser-included instructions. *Id*. Neel acknowledged that, where a client maintains his innocence, there is a risk of losing credibility with the jury in arguing that the State charged the wrong man but then also having a theory that allows the jury to consider that Anderson committed a lesser-included offense. *Id*. As the post-conviction court recognized, regardless of whether Anderson would even have been entitled to lesser included instructions, "it is well established that counsel may opt to pursue an 'all or nothing strategy.'" *PCR App*. at 11 (quoting *Hogan v. State*, 966 N.E.2d 738, 749 (Ind. Ct. App. 2012), *trans. denied*); *see Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998) (trial counsel not deficient for pursuing all or nothing strategy); *Metcalf v. State*, 451 N.E.2d 321, 325 (Ind. 1983) (though tactic did not work, trial counsel not ineffective for deciding, as matter of trial strategy, to take all-or-nothing approach "so as not to give the jury any alternative to conviction as charged or acquittal"). The post-conviction court maintained, and we agree, that the strategy of not tendering jury instructions regarding lesser-included offenses did not constitute ineffective assistance of trial counsel where, as here, it fell within a reasonable trial strategy.

Anderson also contends that Neel was deficient for failing to request that his SVF

11

in possession of a firearm charge be separately tried from the hearing on his habitual offender allegation. At trial, and in response to Anderson's objections, the proceedings were bifurcated so that the murder, intimidation, and carrying a handgun without a license charges were tried separately from the SVF and habitual offender charges, the latter two of which could only be proven by the introduction of prior felonies.

"One of the purposes of bifurcation is to keep prior convictions away from the jury in their initial determination of guilt for the substantive crime charged." *Russell v. State*, 997 N.E.2d 351, 354 (Ind. 2013) (citing *Hines v. State*, 794 N.E.2d 469, 472 (Ind. Ct. App. 2003), *adopted and incorporated by Hines v. State*, 801 N.E.2d 634 (Ind. 2004)). "[T]he primary concern with SVF trials is the labeling of a defendant as a "serious violent felon" and the introduction of evidence of a defendant's criminal history in order to prove SVF status." *Id.* (internal quotation marks omitted).

"A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony." Ind. Code § 35-47-4-5. A person is deemed a "serious violent felon" if he or she has previously been convicted of one of a list of crimes set forth in Indiana Code section 35-47-4-5(b). Robbery is included in that list. Ind. Code § 35-47-4-5(b)(12). "A person convicted of murder . . . is a habitual offender if the state proves beyond a reasonable doubt that: (1) the person has been convicted of two (2) prior unrelated felonies; and (2) at least one (1) of the prior unrelated felonies is not . . . a Class D felony." Ind. Code § 35-50-2-8(b). For each of these offenses, "the rationale for inadmissibility of prior convictions

12

breaks down when the evidence of the prior conviction not only has the 'tendency' to establish guilt or innocence but also is essential to such determination." *Spearman v. State*, 744 N.E.2d 545, 547 (Ind. Ct. App. 2001), *trans. denied.*

Here, the jury heard evidence in phase one of the trial regarding the substantive offenses of murder, intimidation, and carrying a handgun without a license, and the jury returned a verdict of guilty on all three counts. *Tr.* at 198. It was not until after those verdicts had been returned that the trial court had the jury address the possession of a firearm by a SVF charge and the habitual offender allegation. Having found that Anderson was guilty of carrying a handgun without a license in phase one of the trial, the only element the State had to prove for the SVF conviction was that Anderson was a "serious violent felon." The State proved that element by introducing Anderson's 1987 conviction for robbery. *Id.* at 220. That predicate offense was one of the two predicate offenses used to prove Anderson was a habitual offender.

Inasmuch as the jury should be shielded from the defendant's prior criminal history, that is not possible when a defendant is both charged with SVF and alleged to be an habitual offender. As soon as evidence is presented on either of those charges, the jury knows of defendant's criminal history. In other words, here, it would have been impractical to bifurcate the evidence on the SVF count from the habitual offender allegation because regardless of which charge was heard first, by the time the second charge was before the jury, the jury would already know Anderson's criminal history. Anderson suffered no prejudice by the SVF and habitual offender counts being heard together. Appellate counsel

13

was not ineffective for failing to raise meritless claims.

"[W]e evaluate the competence of counsel by examining whether counsel's performance, as a whole, fell below 'an objective standard of reasonableness' based on 'prevailing professional norms.'" *Azania v. State*, 738 N.E.2d 248, 251 (Ind. 2000) (quoting *Woods*, 701 N.E.2d at 1211). That is, effective assistance of counsel is "determined according to the whole of the lawyer's performance and not just on 'the strategy and performance at issue.'" *Id*. (quoting *Butler v. State*, 658 N.E.2d 72, 79 (Ind. 1995)). Even isolated poor strategy, bad tactics, a mistake, carelessness or inexperience would not necessarily amount to ineffective counsel. *Id*. Here, appellate counsel and trial counsel's performances, taken as a whole, were more than adequate. *Id*. (quoting *Davis v. State*, 675 N.E.2d 1097, 1100 (Ind. 1996)).

Based on the foregoing, we conclude that Anderson was not denied the effective assistance of appellate counsel. Therefore, we affirm the post-conviction court's denial of Anderson's petition for relief.

Affirmed.

BAILEY, J., and MAY, J., concur.