## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin Singh,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 26, 2015

Court of Appeals Case No.
49A04-1501-CR-37

Appeal from the Marion Superior Court

The Honorable Sheila A. Carlisle, Judge, and The Honorable Stanley Kroh, Commissioner

Cause No. 49G03-1403-FC-11782

**Najam, Judge.**

## Statement of the Case

[1] Kevin Singh appeals the habitual offender enhancement to his sentence following his conviction for, among other things, stalking, as a Class C felony. The only issue he raises for our review is whether he knowingly, intelligently, and voluntarily waived his right to have a jury determine his status as an habitual offender. We affirm.

## Facts and Procedural History

[2] On March 11, 2014, the State charged Singh with, among other things,[1] stalking, as a Class C felony. On July 25, 2014, the State filed a Motion Seeking Permission to Belatedly File Habitual Offender Enhancement and, on the same day, the trial court granted the motion. The trial court held an initial hearing on August 22, 2014, at which it explained to Singh the meaning of the habitual offender sentence enhancement and the possible penalties. Singh stated that he understood that information.

[3] At a pretrial conference held on September 23, 2014, Singh filed a Waiver of Trial by Jury which stated, in relevant part:

> 2. I have read this form[] and consulted with my attorney regarding the issue of waiving my right to a jury trial.

---

[1] The State also charged Singh with seven counts of intimidation, each as a Class D felony, and thirty counts of invasion of privacy, each as a Class A misdemeanor. However, the State dismissed some of these counts, and the trial court merged the remaining intimidation and invasion of privacy counts with the stalking count due to double jeopardy concerns.

3. I understand that[,] as the Defendant in this criminal case, I have a right to trial by jury[] and that this right is guaranteed by the Constitutions of the United States and the State of Indiana.

4. I understand that a jury trial means that . . . jurors . . . would be selected . . . to sit and listen to all of the evidence presented[] and then decide whether I am guilty beyond a reasonable doubt or not guilty of the charges filed against me in this cause.

5. I understand that no one can take away my right to a jury trial unless I freely and voluntarily waive that right, and I understand that[,] once I waive my right to a jury trial, the waiver is final and I cannot get the right back.

6. I understand that if this waiver is accepted by the Court I will not have a trial by jury[] and that this case will be set for a trial before a Judge who will hear all of the evidence and then decide whether I am guilty or not.

Appellant's App. at 120. Upon receiving this waiver, the trial court placed Singh under oath and questioned Singh's understanding of the waiver as follows:

[THE COURT:] Have you had enough time, Mr. Singh, to talk with Mr. Tompkins, your attorney, about these two documents,[2] waiver of trial by jury?

[THE DEFENDANT:] I have, Your Honor.

---

[2] At the pre-trial conference, Singh filed two waiver-of-jury-trial documents, one for the case at bar and one for a separate, unrelated case pending before the same trial court. The substantive content of the waivers were identical.

[THE COURT:] Okay. And after reading them, you've also placed your signature here on the second page?

[THE DEFENANT:] Correct.

[THE COURT:] Do you believe that you understand these two pleadings?

[THE DEFENDANT:] I fully understand.

[THE COURT:] Okay. And I see they are identical. They are just filed on two separate cases. And what you're advising the Court then is that you wish to waive your constitutional right to a jury trial on these two cases and have the case heard as a court trial rather than a jury trial?

[THE DEFENDANT:] Correct.

[THE COURT:] And do you believe that's in your best interest in how to resolve these two cases?

[THE DEFENDANT:] I do, Judge. I fully understand.

[THE COURT:] Okay. And the Court notes that both attorneys have also signed.

Tr. at 19-20. The Court then found that Singh had made a knowing, intelligent, and voluntary waiver of his right to trial by jury.

[4] The bench trial began on October 17, 2014, and was continued to November 25, 2014, at which time the trial court found Singh guilty of stalking, as a Class C felony. The court noted that the habitual offender issue still needed to be resolved, and the attorney for Singh requested that they "come back and do the habitual as part of the sentencing." *Id.* at 249. The trial court granted that

request, and noted the habitual offender sentence enhancement would "proceed to the court trial" on December 12, 2014. *Id.* at 253.

[5] On December 12, 2014, the court conducted a continuation of the bench trial, wherein Singh stipulated to the prior convictions offered by the State to establish his eligibility for habitual offender enhancement. In return, the State agreed that Singh's total sentence would be limited to "a cap of fourteen years on the overall sentence." *Id.* at 256. The court noted the parties' agreement and concluded that the State had proved beyond a reasonable doubt that Singh was an habitual offender.

[6] On January 9, 2015, the trial court sentenced Singh to six years on the stalking count, with four years suspended. The court enhanced that sentence by six years of executed time due to the habitual offender determination, for a total sentence of twelve years, with four years suspended and eight years executed. This appeal ensued.

## Discussion and Decision

[7] Singh argues that he did not voluntarily, knowingly, and intelligently waive his right to a jury trial on the habitual offender determination. "The United States and Indiana Constitutions guaranty the right to trial by jury." *Dixie v. State*, 726 N.E.2d 257, 258 (Ind. 2000) (footnotes omitted); *see* U.S. Const. amend. VI (guaranteeing "the right to a speedy and public trial, by an impartial jury" in all criminal prosecutions); Ind. Const. art. 1, § 13 (guaranteeing the right to "a public trial, by an impartial jury," in all criminal prosecutions). The right to a

jury trial applies to habitual offender proceedings. *Hogan v. State*, 966 N.E.2d 738, 748 (Ind. Ct. App. 2012), *trans. denied*. A criminal defendant is presumed not to waive this right unless he affirmatively acts to do so. *Id.* It is fundamental error to deny a defendant a jury trial unless there is evidence of the defendant's knowing, voluntary, and intelligent waiver of the right. *Id.* A defendant must express his personal desire to waive a jury trial, and such personal desire must be apparent from the trial court's record. *Poore v. State*, 681 N.E.2d 204, 206 (Ind. 1997).

[8] There is no question that Singh filed a written, signed waiver of jury trial. A defendant's filing of such a signed document demonstrates a personal desire to waive the right to a jury. *Johnson v. State*, 6 N.E.3d 491, 497 (Ind. Ct. App. 2014). And "a lawyer's signature on a waiver implies that the defendant acted upon the advice and information of legal counsel." *Id.*; *see also Poore*, 681 N.E.2d at 207 ("[A] defendant's understanding may be inferred when he and his attorney both sign a written waiver of the jury trial right and file it in open court."). Both Singh and his attorney signed Singh's written jury-trial waiver, and it explicitly states that Singh consulted with his attorney about the waiver. This demonstrates Singh's knowing and voluntary waiver of his right to a jury trial.

[9] Moreover, a knowing jury-trial waiver can be demonstrated by a court record of advisement on the waiver of jury trial and a colloquy in open court. *See, e.g.*, *McSchooler v. State*, 15 N.E.3d 678, 683 (Ind. Ct. App. 2014) (holding that the defendant's waiver of his right to a jury trial was knowingly made where

defendant was advised of his right to trial by jury and he expressed a personal desire on the record to waive that right).  Here, the court placed Singh under oath and questioned him thoroughly about his understanding of the jury waiver.  Singh testified that he had spoken with his attorney about the waiver, that he "fully" understood the jury waiver, that he wished to waive a jury trial on the case and have "the case heard as a court trial rather than a jury trial," and that he believed the waiver was the best way to resolve his case.  Tr. at 19-20.  Singh also testified that he "waived jury not only to not waste the Court's time and resources" but also because he thought his case was "better suited for a bench trial."  *Id.* at 302.  Singh's familiarity with the judicial process is not surprising, given his criminal history.[3]  *See, e.g.*, *McSchooler*, 15 N.E.3d at 683 (finding that the defendant's "somewhat extensive criminal history makes it likely that he knew very well what a jury was and what it meant to waive a jury trial.").  Singh's testimony evinces his understanding of the waiver of his right to a jury trial in his case.

[10]   But Singh argues that his waiver was not intelligent because he did not know the waiver applied to the habitual offender determination.  We addressed this precise issue in *Pryor v. State*, 949 N.E.2d 366, 372 (Ind. Ct. App. 2011), where we held that a jury-trial waiver that applied to "the case" was sufficient to encompass all stages of the proceedings, including the habitual offender phase.  In *Pryor*, as in the case at bar, the defendant claimed that his written jury-trial

---

[3] Singh had at least two prior Class D felony convictions.

waiver was invalid because he had not been advised that a waiver on the charged offenses also constituted a waiver on his habitual offender determination. Yet, as in the case at bar, Pryor's waiver stated that it applied to "the case":

> Here, Pryor executed a waiver acknowledging his right to have a jury hear "his case" and asking that "this case" be set for trial by the court. Pryor affirmed to the court that he understood his right to have a jury hear his "case" and that he wanted a judge to hear the "case" instead. At the time of the waiver submission and colloquy, the State had filed all charges including the habitual offender count. The court had also convened a hearing on the State's notice of filing of habitual offender charge. Pryor was thus aware that his "case" included a habitual offender allegation and, upon conviction, would involve a habitual offender status determination. . . . The advisement's application to Pryor's "case" sufficed to encompass all stages of the proceedings including the habitual offender phase. We therefore cannot say that Pryor's advisement was deficient nor that his jury trial waiver was involuntary, unknowing, or unintelligent.

*Id*.; *see also Johnson*, 6 N.E.3d at 497 (holding that, where the defendant's written jury trial waiver only listed one of the charges against him, it was still a voluntary, knowing, and intelligent waiver of the right to a jury on all counts in his case where the written wavier asked that *the case* be tried to the court).

[11] Here, as in *Pryor*, the written waiver states that Singh will not have a trial by jury, and that "this case" will be set for a trial before a judge. Appellant's App. at 120. Moreover, Singh's written waiver was filed approximately two months after the State had filed its information charging him as an habitual offender,

and approximately one month after the court had conducted an initial hearing at which it explained to Singh the meaning of the habitual offender sentence enhancement and the possible penalties. And, after the filing of the waiver but before the hearing on the habitual offender enhancement, the trial court explicitly stated that the habitual offender sentence enhancement would "proceed to the court trial" on December 12, 2014. Tr. at 253. Thus, as in *Pryor*, Singh was aware that "the case" included a habitual offender determination. *Cf. Jones v. State*, 810 N.E.2d 777, 779-80 (Ind. Ct. App. 2004) (holding that the defendant did not voluntarily, knowingly, and intelligently waive his right to a jury trial on an habitual offender determination where his waiver of jury trial was made *before* the habitual offender information had been filed). The record establishes that Singh's waiver of his right to jury trial was voluntary, knowing, and intelligent as to all stages of the proceedings in his case. Accordingly, we affirm his sentence.

[12] Affirmed.

Kirsch, J., and Barnes, J., concur.