
FILED
Sep 03 2014, 7:02 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY McSCHOOLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1401-CR-13 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1310-FD-1092

**September 3, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

In October of 2013, Appellant-Defendant Timothy McSchooler and Arnetta Rau were involved in a romantic relationship when, early one morning, the duo started fighting. During the fight, McSchooler pushed Rau against a wall and choked her. Later that day, the fight resumed, and McSchooler pushed Rau into a closet and told her that he should kill her. Rau escaped after punching McSchooler in the mouth. The State of Indiana ("the State") charged McSchooler with Class D felony strangulation and Class A misdemeanor battery.

At a pretrial hearing, McSchooler indicated that he wished to forego a jury trial, and a magistrate found that McSchooler knowingly waived his right to jury trial. On the day of trial, the trial court revisited the question of McSchooler's waiver of his right to a jury trial, verifying that McSchooler wanted to forego a jury trial. Following trial, the trial court found McSchooler guilty as charged and entered judgment of conviction on the strangulation charge. Finding McSchooler's criminal history to be an aggravating circumstance, the trial court sentenced him to a maximum sentence of three years of incarceration. McSchooler contends on the appeal that he did not validly waive his right to trial by jury, the trial court abused its discretion in sentencing him, and his sentence is inappropriate. We affirm.

**FACTS AND PROCEDURAL HISTORY**

As of October 15, 2013, McSchooler and Rau had known each other for several years and were romantically involved. At approximately 3:30 to 4:30 a.m. that morning, the duo argued at Rau's home after McSchooler accused Rau of "sleeping around" and prostituting herself on the internet. Tr. p. 99. At approximately 4:30 to 5:30 a.m., the duo began arguing

2

again, with McSchooler again accusing Rau of "performing sexual acts on the internet" and stealing drugs. Tr. p. 108. McSchooler pushed Rau against a wall, on which Rau struck her head. McSchooler then "had [Rau] against the um, [the] pantry door, where he um, he was choking [Rau,] [s]queezing [and] kind of shakin'" with his hands wrapped around her neck. Tr. p. 111. McSchooler picked Rau up by the neck and threw her on the floor.

By around 6:00 a.m., McSchooler had "lightened up" to the extent that the duo walked to a nearby Speedway convenience store so that Rau could get a soft drink. Tr. p. 114. On the way back, McSchooler berated and yelled at Rau. At approximately 7:00 a.m., Rau told McSchooler that she needed to go to the CVS pharmacy and, once he was outside her home, she attempted to lock him out. McSchooler came back inside through a window, and the duo went to the CVS to purchase cat food and a birthday card for Rau's friend Holly.

At around 5:00 p.m., the duo walked back over to the CVS to "get some Hamburger Helper or something to make for dinner." Tr. p. 119. Shortly thereafter, Rau's mother brought over a birthday cake for Holly and some diet Sunkist. After Rau's mother left, Holly came over to retrieve her birthday cake. After Holly left, Rau and McSchooler began to argue again, and "food was thrown." Tr. p. 122. McSchooler again accused Rau of "sleep[ing] around" but added accusations that she had slept with Holly's boyfriend and had prostituted Holly on the internet as well. McSchooler pushed Rau into a closet; said "I ought to just f****** kill you, you know[;]" and kicked Rau in her ribcage directly below her armpit. Tr. p. 124. Rau punched McSchooler in the mouth, ran out of her home, and went to her neighbor's house, where her neighbor called the police.

3

On October 16, 2013, the State charged McSchooler with Class D felony strangulation and Class A misdemeanor battery. Also on that day, McSchooler was advised in open court, "You have the right to a public and speedy trial by jury…. If you are charged with a felony, your case will automatically be set for a jury trial." Tr. p. 1-2. On December 4, 2013, a pretrial hearing was held, at which the following exchange took place:

| | |
|---|---|
| [Defense counsel]: | Uh, your honor, if we can have it uh, my client has decided that he would like to proceed in the matter via a bench trial as opposed to a jury trial. He is not waiving his fast and speedy, so, we still want to keep the dates, uh, it's just that we will save the county some money by not having a jury called in. |
| COURT: | Okay, sir, can you state your name for the record? |
| DEFENDANT | Uh, Timothy McSchooler. |
| …. | |
| COURT: | Okay, and you are set for a jury trial uh, to start December 16th of this year. Are you asking to, are you deciding to waive your jury trial right and proceed with a bench trial? |
| DEFENDANT: | Uh, yes. |
| COURT: | And do you understand that you are waiving that right? You do have the right to proceed with a jury trial? |
| DEFENDANT: | Yes. |

Tr. pp. 28-29.

Before the start of McSchooler's bench trial on December 16, 2013, the trial court revisited the issue of McSchooler's waiver of his right to trial by jury:

| | |
|---|---|
| COURT: | Alright, thank you. Sir, at the last hearing at the pre-trial on December the 4th, the Magistrate went through a hearing and placed you under oath and asked you some questions regarding your waiver of jury trial. Do you remember that? |
| DEFENDANT: | Uh, yes. |
| COURT: | Okay, and at that time you established that you wanted to waive your right to a jury and so we called the jury off |

4

|  | and set it for a bench trial for today's date. Do you understand that? |
|---|---|
| DEFENDANT: | Yes. |
| COURT: | Is it still your intent to go forward without the presence of a jury? |
| DEFENDANT: | Uh, I'm not, I don't know, because I'm under the guidance from [defense counsel], that I would be allowed the question the uh, cross-examine the witness, but, then he told me Friday outside the courtroom that-that is not the case, that I can't question the witness now, so… |
| COURT: | Sir, you can question the witness if you represent yourself. |

Tr. pp. 38-39. Trial proceeded to the bench, after which the trial court found McSchooler guilty as charged. The trial court entered judgment of conviction for Class D felony strangulation only. The trial court found McSchooler's criminal history to be an aggravating circumstance and sentenced him to three years of incarceration.

## DISCUSSION

### I. Whether McSchooler Validly Waived His Right to Jury Trial

McSchooler contends that his waiver of his right to jury trial was not knowing, intentional, and voluntary.

> The right to a trial by jury is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution and by Article 1, § 13 of the Indiana Constitution, and may be waived by a knowing, intelligent and voluntary waiver. *Poore v. State*, 681 N.E.2d 204, 206 (Ind. 1997); *Robey v. State*, 555 N.E.2d 145, 148 (Ind. 1990). The defendant must express his personal desire to waive a jury trial and such personal desire must be apparent from the record. *Poore*, 681 N.E.2d at 206.

*Coleman v. State*, 694 N.E.2d 269, 278 (Ind. 1998). "A knowing, intelligent and voluntary waiver of a jury trial may be accomplished by a written waiver or in open court." *Kimball v. State*, 474 N.E.2d 982, 986 (Ind. 1985). "[E]ven though it may be preferable for the trial

5

court, by way of an on-the-record hearing, to advise the defendant of his right to trial by jury and the consequences of waiving that right, such is not required by either the United States or the Indiana constitutions, or by statute." *Hutchins v. State*, 493 N.E.2d 444, 445 (Ind. 1986).

The record reflects that McSchooler was advised of his right to trial by jury and expressed a personal desire on the record to waive that right, which is sufficient to establish that his waiver was knowing. We conclude that the record is also sufficient to establish that McSchooler's waiver was voluntary and intelligent. McSchooler was advised at least three times on the record that he had the right to trial by jury, and he twice affirmatively waived that right.[1] Moreover, when McSchooler waived his right to jury trial, he was represented by counsel, who indicated that "we will save the county some money by not having a jury called in." Tr. p. 28. McSchooler's attorney's statement gives rise to a reasonable inference that he and McSchooler consulted regarding the decision to waive the right to jury trial beforehand and settled upon what strikes us as a not-unreasonable strategic decision. Finally, McSchooler's somewhat extensive criminal history makes it likely that he knew very well what a jury was and what it meant to waive a jury trial. The record is sufficient to establish that McSchooler knowingly, intelligently, and voluntarily waived his right to trial by jury. *See, e.g.*, *Poore*, 681 N.E.2d at 208 (concluding that waiver of jury trial was valid where defendant filed written waiver, was represented by counsel who cosigned the waiver, and had

---

[1] McSchooler seems to suggest that he attempted to withdraw his waiver during his discussion with the trial court on the day of his trial, when his partial response to the trial court's question regarding whether he intended to proceed without a jury was "I don't know[.]" Tr. p. 39. In context, it is clear that McSchooler was referring to his confusion regarding whether he would be allowed to personally question witnesses if he were represented by counsel.

6

extensive criminal history).

McSchooler relies on cases from the United States Court of Appeals for the Seventh Circuit for the proposition that a more detailed advisement should be required before there can be a valid waiver of the right to trial by jury. In *United States v. Delgado*, 635 F.2d 889 (7th Cir. 1981), the court stated the following:

> We take this opportunity to advise the trial courts that they should explain that a jury is composed of twelve members of the community, that the defendant may participate in the selection of jurors, and that the verdict of the jury is unanimous. The court should inform the defendant that if he waives a jury, the judge alone will decide guilt or innocence. After informing the defendant of these factors, the trial court should then ascertain whether the defendant wishes to waive his right to a jury trial.

*Id.* at 890; *see also U.S. v. Scott*, 583 F.2d 362, 364 (7th Cir. 1978) ("The rule now announced, and effective one month after the date of this decision, requires that before a district court accepts a waiver of jury trial the court will interrogate the defendant to ensure that he understands his right to a jury trial and the consequences of waiver.").

There are at least two reasons why McSchooler's reliance on the Seventh Circuit decisions is unavailing. First, as the Seventh Circuit itself acknowledges, *Delgado* and similar cases are not binding on state courts, and "[l]esser (even no) warnings do not call into question the sufficiency of the waiver so far as the Constitution is concerned." *U.S. v. Rodriguez*, 888 F.2d 519, 527 (7th Cir. 1989). Second, as the Seventh Circuit also acknowledges, the *Delgado* warnings "are called for as a matter of prudence" and are by no means mandatory in every case, even in the District Courts of the Seventh Circuit. *Id.* Because the Indiana Supreme Court has declined to hold that more comprehensive

7

advisements must be given before a waiver of the right to jury trial may be accepted, we are constrained to conclude that McSchooler's waiver was valid in this case. *See Hutchins*, 493 N.E.2d at 445.[2]

## II. Whether the Trial Court Abused Its Discretion in Sentencing McSchooler

McSchooler contends that the trial court abused its discretion in sentencing him. Under Indiana's criminal sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2008). We review the sentence for an abuse of discretion. *Id*. An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id*.

A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence– including a finding of aggravating and mitigating factors if any—but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id*. at 490-91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the

---

[2] While advisements of the type described by the *Delgado* court are not required for a valid waiver of jury trial, we agree with the Seventh Circuit that the better course of action would be to advise a defendant as it has suggested.

record." *Id*. at 491. However, under the new statutory scheme, the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. *Id*. McSchooler contends that the trial court abused its discretion in failing to find as mitigating circumstances, the fact that his mother was buried the day before his assault on Rau and his waiver of his right to jury trial.

McSchooler did not advance in the trial court either of the circumstances he now contends are mitigating. Consequently, McSchooler has waived them for appellate consideration. *See Pennington v. State*, 821 N.E.2d 899, 905 (Ind. Ct. App. 2005) (holding that defendant who fails to raise proposed mitigators at the trial court level is precluded from advancing them for the first time on appeal). Waiver notwithstanding, we conclude that McSchooler's arguments are without merit. McSchooler's mother died on October 4, 2013, and was buried the day before his assault on Rau, and he suggests that his actions may have been related to the death of his mother. There is nothing in the record to substantiate this claim; there is no evidence that McSchooler so much as mentioned his mother during his prolonged assault on Rau, and there is no other evidence of any nexus between the two events.

As for McSchooler's argument that his waiver of jury trial should have been given mitigating weight, again we conclude that the record does not support this claim. McSchooler notes that the Indiana Supreme Court has concluded that defendants who plead guilty deserve that "some" mitigating weight be given to the plea. *See Anglemyer*, 875 N.E.2d at 220 ("We have held that a defendant who pleads guilty deserves "some" mitigating

9

weight be given to the plea in return."). McSchooler argues that his waiver of his right to jury trial is analogous to a guilty plea and therefore deserving of some mitigating consideration. We do not consider the situations sufficiently analogous to help McSchooler. Although the State is saved expense in both circumstances, a guilty plea often demonstrates a defendant's acceptance of responsibility, which waiver of jury trial does not. The Indiana Supreme Court has recognized that "a guilty plea may not be significantly mitigating when it does not demonstrate the defendant's acceptance of responsibility[.]" *Id.* at 221. While it may be that in some cases it would be appropriate to accord waiver of jury trial mitigating weight, McSchooler has failed to establish that this is one of those cases.

### III. Whether McSchooler's Sentence Is Inappropriate

We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). As previously mentioned, the trial court imposed a maximum three-year sentence on McSchooler for Class D felony strangulation.

The nature of McSchooler's offense fully justifies an enhanced sentence, as his actions went far beyond what the State was required to prove to sustain his conviction. "A

10

person who, in a rude, angry, or insolent manner, knowingly or intentionally … applies pressure to the throat or neck of another person … or … obstructs the nose or mouth of another person … in a manner that impedes the normal breathing or the blood circulation of the other person commits strangulation, a Class D felony." Ind. Code § 35-42-2-9 (2013). McSchooler did far more than commit strangulation against Rau, pushing her into a wall on which she struck her head, lifting her up by her neck and throwing her on the floor, pushing her into a closet, kicking her in the ribcage, and saying that he "ought to just f****** kill [her."] Tr. p. 124. The sustained assault on Rau took place over several hours, during which McSchooler also repeatedly accused Rau of being a prostitute, philanderer, and thief. The record indicates that the effect on Rau has been profound. As the trial court noted when explaining its finding of guilt, "I have a complaining witness who takes the stand and refuses to make eye contact with the Defendant, visibly shaking, appears to be out of fear." Tr. p. 253. The egregious nature of McSchooler's offense justifies an enhanced sentence.

McSchooler's character also justifies his maximum sentence. McSchooler has an extensive criminal history, much of it involving violence. McSchooler has prior convictions for Class B felony neglect of a dependent causing serious bodily injury (arising from an incident where an infant in McSchooler's care died), Class A misdemeanor operating a vehicle while intoxicated, two battery convictions, resisting law enforcement, and public intoxication. The record also contains some indications that McSchooler did not take the proceedings seriously, indicating a lack of appreciation for what he had done. The trial court noted that McSchooler appeared to be sleeping at one point during his trial, McSchooler was

11

a "classic case" of a person who wanted to control those around him, and McSchooler really did not "give two cents about" anything the trial court was saying while explaining its decision. Tr. p. 254. McSchooler's frequently-violent criminal history, failure to appreciate the gravity of his actions, and apparent contempt for the criminal justice system do not speak well of his character. In light of the nature of his offense and his character, McSchooler's enhanced sentence is fully justified.

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur.