## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 12 2015, 10:13 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

William Byer, Jr.
Byer & Byer
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Graham T. Youngs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antwaun D. Moody,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 12, 2015<br><br>Court of Appeals Cause No.<br>48A02-1408-CR-548<br><br>Appeal from the Madison Circuit Court<br>Cause No. 48C04-1211-FB-2090<br><br>The Honorable David A. Happe, Judge |

**Barnes, Judge.**

## Case Summary

[1] Antwaun Moody appeals his aggregate eighteen-year executed sentence for dealing in cocaine, a Class B felony; possession of a controlled substance, a Class D felony; possession of marijuana, a Class A misdemeanor; and resisting law enforcement, a Class A misdemeanor. We affirm.

## Issue

[2] The issue is whether Moody's eighteen-year sentence is inappropriate in light of his offenses and character.

## Facts

[3] On November 2, 2012, Officers Chad Boynton and Chris Frazier of the Anderson Police Department responded to complaints of high foot traffic around the apartment of Adrienne Jones. The apartment complex manager explained that foot traffic was particularly heavy when Moody, who held no leasehold interest in the property, was at Jones's apartment, and the manager speculated that Moody was involved in selling illicit drugs. Before the dispatch, Officers Boynton and Frazier learned that Moody had an outstanding warrant for his arrest.

[4] Officers Boynton and Frazier were in the parking lot across from Jones's apartment and, upon Moody's departure from the unit, Officer Frazier called Moody by name and instructed him to stop. Moody fled, and other officers were called to secure the perimeter. Moody was caught a few blocks away.

Detective Bill Richardson later relayed that before Moody was caught, he saw Moody briefly crouch down by a garage. After Moody fled the garage, Detective Richardson entered and found $935 in cash, which the garage owners confirmed was not theirs.

[5] After Moody was apprehended, Officer Frazier contacted Jones, who met Officer Frazier at her apartment and signed a waiver permitting officers to search her apartment. Officer Boynton and Officer Matthew Jarrett searched the apartment and found two metal pots containing white liquid residue, glass cookware bearing white residue, digital scales, a "large amount" (121.1 grams total) of a yellow, rock-like substance that tested positive for cocaine, as well as white powder in a plastic bag that did not test positive for cocaine. Tr. p. 58. Three alprazolam pills and 1.22 grams of marijuana were found on the kitchen's countertop. Three firearms—two loaded—were found in the apartment. The search also yielded a black wallet containing Moody's identification. A fingerprint was recovered from the glass cookware and later was identified as a match to Moody. Officer Boynton believed that the items found in the apartment were consistent with the manufacturing and selling of crack cocaine.

[6] Moody was charged with four counts from the November 2, 2012, arrest, which constitute the basis of this appeal: dealing in cocaine as a Class A felony; possession of a controlled substance as a Class D felony; possession of marijuana as a Class A misdemeanor; and resisting law enforcement as a Class A misdemeanor. On November 12, 2012, Moody was released on bond.

On April 10, 2014, while on patrol, Officer Boynton and Detective Kris Ockomon encountered an illegally parked vehicle. The driver identified himself as "Montrez Cloud" and provided a date of birth and Social Security number. The officers ran the information, and the search revealed it was falsified. Moments later, several women approached in another vehicle and advised that the driver of the illegally parked car was Moody. When Officer Ockomon instructed Moody to exit the vehicle, Moody head-butted him, propelling him backwards. Moody fled on foot, and after being apprehended once by the officers, fled again while being handcuffed. A foot chase ensued, and when Officer Boynton reached Moody, Moody fell and began "kicking and flaying," striking Officer Boynton in the knee. *Id.* at 25. In Moody's possession was a substance that resembled, but did not test positive for, crack cocaine.

From the April 10, 2014, incident, Moody was charged with escape as a Class B felony; dealing in a look-alike substance as a Class C felony; two counts of battery as Class D batteries; three counts of resisting law enforcement as Class D felonies; one count of resisting law enforcement as a Class A misdemeanor; and false informing as a Class A misdemeanor.

At a consolidated guilty plea hearing, Moody pled guilty to the charges from the April 10, 2014, incident and also pled guilty to pointing a firearm as a Class D felony, a charge from an arrest that occurred on August 1, 2012. In the cause at issue, Moody pled guilty to all four counts, although the dealing in cocaine count was reduced to a Class B felony.

At a consolidated sentencing hearing, Moody was sentenced to eighteen years with fourteen years executed and served for the April 10, 2014, charges and August, 1, 2012, charge. Moody was sentenced to an aggregate eighteen-year executed sentence for the four counts from the November 2, 2012, incident.

Regarding the November 2, 2012, convictions, the trial court found as aggravating factors Moody's extensive juvenile record, his violation of the pretrial release conditions, and his felony convictions in the companion cause. In terms of mitigating factors, the court noted Moody's admission of guilt and his relatively young age as a twenty-one-year-old but explained that due to his extensive criminal record, his youth was afforded "very little mitigating weight." *Id.* at 70. Moody now appeals.

## Analysis

Moody argues that the trial court's imposition of an aggregate eighteen-year executed sentence is inappropriate. We assess whether Moody's sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007). Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[13] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[14] Our review of the nature of the offense reveals that Moody's operation was consistent with manufacturing and selling crack cocaine and that, especially given Moody's relative youth, the operation was exceptional. Officer Boynton testified that in his experience, "[i]t's very, very rare" for a person of Moody's age to deal in such large quantities and value of cocaine. Tr. p. 64. The presence of loaded firearms in the drug operation is a red flag. Finally, the State justifiably notes that while the quantity of cocaine was significantly greater than the minimum required for a Class A felony, which entails a maximum sentence of fifty years, Moody was convicted of a Class B felony,

which bears a maximum sentence of twenty years. *See McSchooler v. State*, 15 N.E.3d 678, 685 (Ind. Ct. App. 2014) (affirming sentence as appropriate where defendant's "actions went far beyond what the State was required to prove to sustain his conviction").

[15] Our review of Moody's character reveals that, despite his relatively young age, Moody has a considerable criminal record. Moody's juvenile record contains numerous adjudications, including resisting law enforcement, conversion, auto theft, and possession of marijuana and cocaine. In his short adult life, Moody has amassed several adult convictions, namely those from the immediately prior cause at the consolidated hearings. Moody argues that the fourteen-year sentence imposed from those companion convictions will provide sufficient rehabilitation. However, Moody's extensive and persistent criminality and the fact that he committed numerous offenses while on bond and pretrial release indicate a "disregard for the law" that justifies the trial court's sentencing. *Coy v. State*, 999 N.E.2d 937, 949 (Ind. Ct. App. 2013).

[16] Moody argues that a ten-year sentence is more appropriate. Pursuant to Rule 7(B), however, Moody must persuade us not that another sentence is *more* appropriate but that the sentence imposed is inappropriate. *See Webb v. State*, 941 N.E.2d 1082, 1090 (Ind. Ct. App. 2011), *trans. denied*. In light of the capacity and potential dangerousness of Moody's drug operation and his significant criminal record, he has failed to meet this burden.

## Conclusion

Moody's aggregate eighteen-year executed sentence is not inappropriate. We affirm.

Affirmed.

May, J., and Pyle, J., concur.