## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2017, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan D. Rayl
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Leonardo,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 21, 2017<br><br>Court of Appeals Cause No.<br>49A05-1704-CR-768<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>Trial Court Cause No. 49G04-1507-F3-25888 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Jason Leonardo (Leonardo), appeals his conviction and sentence for armed robbery, a Level 3 felony, Ind. Code § 35-45-5-1(1).

[2] We affirm.

# ISSUES

[3] Leonardo presents two issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by failing to find Leonardo's former unsuccessful guilty plea to the armed robbery offense as a mitigating factor; and

(2) Whether Leonardo's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

[4] On July 21, 2015, sixteen-year-old Leonardo sent a message through "kick messenger" to eighteen-year-old Miguel Mundo (Mundo) to be picked up from his residence in Indianapolis, Indiana. (Transcript p. 9). At the time, Mundo drove a silver Impala, and according to Mundo, he was going to pick up Leonardo so that they could "meet up with some girl." (Tr. p. 9). When Mundo arrived at Leonardo's residence, Leonardo was in the company of another unidentified "Black [M]ale." (Tr. p. 10). Leonardo sat in the front passenger seat, and the Black Male sat in the back. Leonardo directed Mundo to drive to an apartment complex that was "about two lights down." (Tr. p.

11).  When they arrived, Leonardo instructed Mundo to reverse into a covered carport, and Leonardo indicated that they were waiting on the girls.  After a few minutes, Leonardo told Mundo to "look back" and noticed that "the [B]lack [M]ale had a gun" aimed at the back of his head.  (Tr. p. 13).  The Black Male was laughing.  Mundo returned to face forward, and Leonardo instructed Mundo to put up his hands and close his eyes.  Leonardo threatened Mundo by stating "something bad was going to happen" if he opened his eyes.  (Tr. p. 13).  Notwithstanding the instruction, Mundo opened his eyes, and he saw Leonardo holding a gun to the side of his head.  Leonardo then ripped from Mundo's neck, "two gold chains with gold medallions." (Tr. p. 15).  Leonardo additionally took Mundo's diamond earrings.  Leonardo afterwards exited the vehicle and ordered Mundo to get out of his vehicle.  While still armed with a gun, Leonardo directed Mundo to undress.  Leonardo took Mundo's clothes, as well as Mundo's Tommy Hilfiger wallet, Ray Ban prescription eye glasses, a gray iPhone 6, and an LG Android phone.  After stealing from Mundo, Leonardo and the Black Male drove away in Mundo's silver Impala.  As soon they were gone, Mundo knocked on the door of an apartment and a woman answered.  The woman called the police and gave Mundo clothes to wear.  When the Indianapolis Metropolitan Police Department officers arrived, Mundo stated that Leonardo had robbed him at gunpoint.  Leonardo was thereafter arrested.

[5]    Leonardo was waived into adult court, and on July 23, 2015, the State filed an Information, charging him with Count I, armed robbery, a Level 3 felony, I.C.§

35-45-5-1(1); and Count II, intimidation, a Level 5 felony, I.C. § 35-45-21(a)(1). On June 29, 2016, pursuant to a plea agreement, Leonardo agreed to plead guilty to Level 3 felony armed robbery, and the State agreed to dismiss the intimidation charge. On August 10, 2016, a guilty plea hearing was conducted. In attempt to establish the factual basis for Leonardo's armed robbery offense, the State read the charging information, and thereafter gave an account of the robbery. Specifically, the State alleged that Leonardo pointed a gun at Mundo and subsequently took Mundo's gold chains, diamond earrings, clothes, phones, wallet, and eye glasses. The State further alleged that Leonardo drove away in Mundo's silver Impala. Following the State's narration, the following exchange occurred between the trial court and Leonardo:

> [TRIAL COURT]: Alright. Is that the truth about what you did?
>
> [LEONARDO]: Some of it.
>
> [TRIAL COURT]: Tell me what you did?
>
> [LEONARDO]: Like, I didn't call [Mundo], and that day he called me. He told me he wanted to go get some marijuana so he came and picked me up. And then we pulled in Chapel Hill, . . . I was just in the car, . . . [Mundo] like did pick up the phone and [was] calling [someone] to come outside. Then he got mad and I just told him[] like "man, we can come back later". And then he gets angry with me, he pull out - - he pulled it out - - he pulled the gun out first 'cause (sic) he call me a little. . . bitch. And I was like, "man, why you calling me that, watch your mouth". And then he got mad and told me to watch my mouth, he pulled it out. I just out of reflex[,] I brought a gun and just moved it and

got to wrestling him and we got to fighting, that's when like the jewelry came off and I kicked him - - and I like opened the door, he fell out the car. And that's why I came over there. I seen he had a knife in his (inaudible) pocket, so I told him to take off his pants cause I ain't know what kind of weapons he had. Other than that, I left with the car and his phone, 'cause I ain't have no phone at that time. So I called my friend to come over to his house, then I drove to his house.

[TRIAL COURT]: Drove to who's house?

[LEONARDO]: My friend, Chris.

[TRIAL COURT]: And you drove. . .

[LEONARDO]: (Inaudible)

[TRIAL COURT]: Whose car?

[LEONARDO]: [Mundo's]. . . . I got in the driver['s] seat and took off when I . . . got him out of the car.

[TRIAL COURT]: Well, that's a different way of looking at things. That looks more like an auto theft.

(Guilty Plea. Tr. pp. 19-20). Because Leonardo's version of events differed from the State's, the trial court was unable to establish a factual basis for Leonardo's armed robbery charge. As such, the trial court rejected the parties' proposed plea agreement and set the matter for a trial.

[6] Leonardo waived jury trial and on February 24, 2017, the trial court conducted a bench trial. At the close of the evidence, the trial court found Leonardo guilty of Level 3 felony armed robbery, but not guilty of Level 5 felony intimidation. On March 15, 2017, the trial court held a sentencing hearing, and it subsequently sentenced Leonardo to an executed nine-year sentence with three years suspended to probation.

[7] Leonardo now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sentencing*

[8] Leonardo initially claims that the trial court abused its discretion by failing to consider his initial guilty plea to the Level 3 felony armed robbery, as a significant mitigating factor.

[9] Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (internal quotations and citation omitted). A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at

490-91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id*. at 491.

[10] Leonardo contends that the trial court should have considered his prior unsuccessful guilty plea for armed robbery, as a mitigating factor. In response, the State argues that Leonardo waives this issue on appeal since he failed to raise it during the sentencing hearing. When a defendant does not propose a mitigating factor at sentencing, the trial court "'presume[s] that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal.'" *Hollin v. State*, 877 N.E.2d 462, 465 (Ind. 2007) (quoting *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000)). There is an exception to the waiver rule when a defendant pleads guilty. *Anglemyer*, 875 N.E.2d at 220. First, we find that the waiver exception does not apply to Leonardo because his guilty plea was rejected, and he was convicted following a bench trial. Secondly, although Leonardo did testify during his sentencing hearing that the trial court should consider that he had a one-month old son as a mitigating circumstance, Leonardo did not seek the trial court's consideration of his former unsuccessful guilty plea at sentencing. Therefore, Leonardo waives this issue on appeal. In light of the foregoing, we conclude that the trial court did not abuse its discretion while sentencing Leonardo.

## II. *Inappropriate Sentence*

[11] Leonardo claims that his nine-year sentence with three years suspended to probation is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.*

[12] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Level 3 felony armed robbery, Leonardo faced a sentencing range of three years to sixteen years with the advisory sentence being

nine years. I.C. § 35-50-2-5(b). Here, the trial court imposed the advisory sentence.

[13] Considering the nature of the offense, Leonardo convinced Mundo to give him a ride with the ruse that they were going to meet some girls. When they arrived at an apartment complex, Leonardo directed Mundo to reverse into a carport to wait for the girls. A few minutes later, Leonardo told Mundo to turn around, and when he did, Leonardo's accomplice was pointing a gun at Mundo's head. Leonardo directed Mundo to put his hands up and close his eyes or "something bad was going to happen," and he also aimed a gun at Mundo's head. (Tr. p. 13). Leonardo then snatched Mundo's gold chains and diamond earrings. While armed with a gun, Leonardo ordered Mundo get out of his vehicle and remove his clothes. Leonardo proceeded to take Mundo's clothes, including Mundo's wallet, eye glasses, a gray iPhone 6, and an LG Android phone. After stealing from Mundo, Leonardo and his accomplice left a half-naked Mundo in the parking lot, and drove away in Mundo's silver Impala. We are not persuaded that anything about the nature of Leonardo's offense permits a reduction of the advisory nine-year sentence.

[14] As for Leonardo's character, we acknowledge that he was only sixteen-years-old at the time of his offense. However, between the age of fifteen and the crime at issue here, Leonardo had three contacts with the juvenile justice system. In April of 2014, Leonardo was adjudicated as a delinquent for dangerous possession of a firearm and auto theft. In November of 2014, he was arrested for auto theft, but no action was taken against him. In April of 2015, a

true finding was issued against Leonardo for resisting law enforcement and he was put on probation. At the time Leonardo robbed Mundo at gunpoint, he was still on probation for the resisting law enforcement offense. In addition, while Leonardo was out on bail for the instant offense, he committed another offense. Specifically, Leonardo stole his mother's vehicle and was arrested for driving without a license. The presentence report shows that Leonardo had been expelled from school multiple times, and he eventually stopped attending altogether and did not pursue education or employment opportunities thereafter. Leonardo's drug use also reflects poorly on his character. Leonardo admittedly stated that he began using marijuana at age twelve, and he uses it "like once a month." (Appellant's App. Vol. II. Conf. p. 85). Leonardo's character shows disrespect for the judicial process and disregard of the law. For all of the above reasons, Leonardo has failed to meet his burden in persuading us that his sentence is inappropriate in light of his character. Accordingly, we cannot say that Leonardo's nine-year sentence is inappropriate in light of the nature of the offense and his character.

## CONCLUSION

In sum, we conclude that the trial court did not abuse its sentencing discretion while sentencing Leonardo, and Leonardo's sentence is not inappropriate in light of the nature of the offense and his character.

Affirmed.

Pyle, J. concurs

[18]     Robb, J. concurs with concurring separate opinion

| | |
|---|---|
| Jason Leonardo, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | Court of Appeals Case No. <br> 49A05-1704-CR-768 |

**Robb, Judge, concurring.**

[19] I concur, but write separately to point out an additional reason for denying Leonardo's claim regarding his guilty plea as a mitigating factor. Not only did Leonardo not raise the guilty plea issue to the trial court at the sentencing hearing, he did not actually plead guilty. Leonardo's plea *was* rejected by the trial court, but not because the trial court thought the penalty was too light or for some other reason within the trial court's prerogative but through no fault of Leonardo's. Rather, the plea was rejected because when the trial court attempted to confirm the factual basis for the plea, *Leonardo* failed to acknowledge his guilt of the crimes to which he was allegedly pleading guilty. He did not express remorse; he did not take responsibility for his actions; and he did not save the State and the court the time and expense of trying him, all

factors which contribute to a guilty plea being deserving of some mitigating weight. *See McSchooler v. State*, 15 N.E.3d 678, 685 (Ind. Ct. App. 2014). Even if Leonardo had proffered his unsuccessful guilty plea to the trial court as a potential mitigating factor, the trial court would not have abused its discretion in failing to find this a mitigating factor when in fact there was no guilty plea.